## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 09-61466-CIV-DIMITROULEAS/GOODMAN

DERRICK FIELDS,

      Plaintiff,

vs.

ROBERT GORMAN, et al,

      Defendants.

_____/

### REPORT AND RECOMMENDATION
### ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment (DE# 24). The Court reviewed the motion and associated briefing, the evidence submitted in connection with the motion, the applicable case law, and is otherwise duly advised. For the reasons set forth below, the Court respectfully recommends that the summary judgment motion be granted.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Derrick Fields, is presently incarcerated at the Okeechobee Correctional Institution in Okeechobee, Florida, where he is serving a 25-year sentence for burglary of a dwelling and attempted murder.[1] Fields filed a civil rights complaint on September 17, 2009 (DE# 1) against the Broward County Sheriff's Office and seven of its detectives. On October 20, 2009, Magistrate Judge White issued a Preliminary Report pursuant to 28 U.S.C. § 1915, which found that Fields' complaint stated a cause of action against detectives Henry Lopez, Gerardo Lopez, and Robert Gorman for using excessive force and/or failing to intervene during Fields' arrest in violation of the Fourth Amendment (DE# 7). The Honorable William P. Dimitrouleas, United States District Judge, adopted the report on November 11, 2009 (DE# 12).

---

[1] In November 2009, a Broward County jury convicted Fields of burglary of a dwelling with damage in excess of $1,000, Fla. Stat. § 810.02(1),(2)(c)2, and first degree attempted murder, Fla. Stat. §§ 777.04(1),(4) and 782.04(1)(a) (DE# 26-9,10).

The Defendants moved for summary judgment on April 12, 2010 (DE# 24). The Defendants argue that summary judgment should be granted because the evidence shows that they did not unconstitutionally use excessive force against Fields and they are entitled to qualified immunity. Fields filed a brief in opposition to the motion on June 14, 2010 (DE# 35), and the Defendants filed a reply brief on June 18, 2010 (DE# 36). On July 29, 2010, Magistrate Judge Patrick A. White transferred the case to me (DE# 41).

The crux of Fields' allegations is that the Defendants used excessive force while arresting him on February 23, 2009.[2] It is not disputed that on February 23, Ashley Mahnke met with Detective H. Lopez and described how Fields had violently burglarized her home earlier that day. Mahnke told H. Lopez that Fields beat her up on several occasions, threatened to kill her and her family and was probably in possession of a firearm. H. Lopez enlisted Mahnke to send Fields a text message in order to lure him back to her residence by telling Fields that she would like to speak with him. Mahnke, who wished to press charges against Fields, sent Fields the text message and Fields returned to her residence.

At this point, the parties' accounts diverge. Fields claims that he showed up to meet Mahnke when, out of nowhere, the Defendants jumped him, beat him, and kicked him. Fields claims that at no time did he resist arrest or attempt to flee, that he never attacked or threatened Mahnke, and that Mahnke was never in any danger. Fields further contends that the Defendants' actions were motivated by racial bias because they assumed that Fields, who is a "big black guy," was "trying to hurt a little white girl [Mahnke]" (DE# 35, at 3). There is no evidence in the record to support Fields' racial bias claim.

The Defendants tell a different tale and support their version of events with substantial competent evidence. According to the Defendants, H. Lopez arrived on the scene, drew his firearm, and shouted at Fields not to move. But Fields ran and grabbed

---

[2]     In his response to the motion for summary judgment, Fields also challenges the legality of his arrest. Pursuant to the Order Adopting Report of Magistrate Judge (DE# 12), which adopted the Preliminary Report of Magistrate Judge (DE# 7), this case is proceeding solely on Fields' claims of excessive force and failure to intervene under the Fourth Amendment -- and not unlawful arrest. Furthermore, it appears that a challenge to the lawfulness of Fields' arrest would be barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), and that the arrest was supported by probable cause.

Mahnke, slammed her against a truck, and dragged her away in a chokehold, yelling "I am going to kill you bitch."  Fields held Mahnke by the neck and slammed her into a parked car.  H. Lopez could not get a clear shot of Fields without endangering Mahnke, so he jumped on Fields and tried to pry Mahnke loose.  After H. Lopez punched Fields in the jaw, Fields released Mahnke but continued throwing punches at H. Lopez and the other Defendants who were now on the scene.  Eventually the Defendants were able to get on top of Fields and handcuff him.

After the arrest, the Defendants took Fields to Broward General Medical Center, but Fields refused treatment.  Nevertheless, Fields was diagnosed with lacerations to his chin and left fourth finger and cleared for jail.  The discharge paperwork indicates that Fields may have had a hand fracture.  Fields claims that the Defendants disfigured his face and hand and fractured his skull.

## II.    EVIDENCE SUBMITTED

The evidence before the Court on this motion is as follows:

1.   Three (3) Broward Sheriff's Office Event Reports (DE# 26-1, 26-5, 26-8). The first report, based on a meeting between a deputy sheriff and Mahnke, describes Fields' burglary of Mahnke's dwelling on the morning of February 23, 2009.  The second and third reports, by Defendants H. Lopez and Gorman respectively, describe Fields' assault on Mahnke and the altercation with law enforcement officers immediately preceding his arrest.  These reports support the Defendants' version of events.

2.   Two (2) probable cause affidavits against Fields (DE# 26-2, 26-6).  The first affidavit concerns the morning burglary incident and states that Fields committed burglary of an occupied dwelling and assault.  The second affidavit relates to the arrest/attempted murder incident and states the Fields committed aggravated battery, battery by strangulation, and violation of probation.

3.   Depositions of H. Lopez and Mahnke, taken by the assistant public defender who represented Fields in his state criminal trial (DE# 26-3,4).  The depositions also support the Defendants' account of events.  They describe H. Lopez's meeting with Mahnke, during which Mahnke related that Fields beat her on several occasions and threatened to kill her.  H. Lopez's deposition states that Fields strangled and slammed Mahnke, resisted arrest, and threw punches at law enforcement officers.  According to

Mahnke's deposition, Mahnke begged Fields to let her go because she could not breathe but Fields (1) did not comply, (2) threatened to kill her, and (3) threatened to break her neck and break every bone in her body.

4. Fields' medical records from Broward General Medical Center, dated February 24, 2009 (DE# 26-7).

5. A felony information charging Fields with burglary of a dwelling and attempted murder (DE# 26-9) and state court records, including the jury verdict, confirming that that the jury convicted Fields of both crimes (DE# 26-10).

6. An affidavit by G. Lopez (DE# 26-11), stating that he observed the altercation between Fields and H. Lopez and that Fields did not release Mahnke after H. Lopez instructed him to do so. G. Lopez also swears that he saw Fields slam Mahnke against parked vehicles and that Mahnke appeared semi-conscious and was breathing with difficulty.

7. Fields' Department of Corrections Inmate Information Sheet (DE# 26-12), indicating that Fields is currently serving a twenty-five year prison sentence for the burglary and attempted murder convictions.

All of the above-mentioned evidence was submitted by the Defendants with their motion for summary judgment and amply supports their versions of events. Fields did not submit any *evidence* in response to the Defendants' motion for summary judgment.[3]

---

[3]    Fields was instructed by order of this court of his obligations under the Federal Rules of Civil Procedure in opposing the Defendants' motion for summary judgment (DE# 27). Specifically, Magistrate Judge White instructed and "specifically cautioned" Fields that he "cannot rely solely on his complaint and other pleadings" but, instead, "must respond with affidavits, depositions, or otherwise, to show that there are material issues of fact which require a trial." Fields' response (DE# 35) is not an affidavit or other competent evidence. Instead, it is merely a rhetoric-filled argument repeating and rehashing his allegations. This is not "evidence" and is insufficient to be considered in opposition to the Defendants' summary judgment motion. 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2723, at 389-90 (summary judgment motion cannot be defeated "by factual assertions in the brief of the party opposing it"); *see also Taylor v. Small*, 350 F.3d 1286, 1294-95 (D.C. Cir. 1998) (quoting Wright & Miller); *Goodway Marketing, Inc. v. Faulkner Advertising Associates, Inc.*, 545 F. Supp. 263, 268 (E.D. Pa. 1982) ("statements made in counsel's briefs are not evidence for purposes of establishing a disputed issue of material fact" for summary judgment purposes).

### III.    LEGAL STANDARDS

#### a.    Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Allen,* 121 F.3d at 646.  On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant.  *Celotex*, 477 U.S. at 322-23; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 252.  Indeed, "Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial."  *Schechter v. Ga. State Univ.*, 341 Fed. Appx. 560, 562 (11th Cir. 2009).  A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to defeat a properly supported motion for summary judgment.  *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

---

Indeed, Rule 56 itself provides that summary judgment should be granted, if appropriate, if the opposing party does not properly respond with affidavits or other materials provided for in the Rule.  Rule 56 does not authorize a party opposing a summary judgment motion to do so by relying on his allegations or submitting argument or other unacceptable materials.

### b.  Qualified Immunity

The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000).  A constitutional right is clearly established if the law at the time of the incident gave officials fair warning that their behavior was unlawful.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  The law is "clearly established" for qualified immunity purposes by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals, or the highest state court.  *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998).

To show that an official is not entitled to immunity, the plaintiff must point either to earlier case law that is "materially similar . . . and therefore provide[s] clear notice of the violation," or to "general rules of law from a federal constitutional or statutory provision or earlier case law that appl[y] with obvious clarity to the circumstances" and clearly establish that the conduct was unlawful.  *Trammell v. Thomason*, 335 Fed. Appx. 835, 841 (11th Cir. 2009) (alteration in original) (quoting *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007)).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates [a] right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Id; see also Wilson v. Layne*, 526 U.S. 603, 615 (1999).

In ruling on qualified immunity, courts engage in a two-step analysis: (1) whether the evidence, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right; and, if so, (2) whether the right violated was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The Supreme Court recently held, however, that "while the sequence set forth [in *Saucier*] is

often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).[4]

### c.  Application of Force by Law Enforcement Officers

Excessive force claims arising out of arrests or other stops by the police are most properly characterized as arising out of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Such claims are measured under a "reasonableness" standard, which requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396.  Application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case." *Id*.; *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985).  The relevant inquiry in such a case is whether the officer's conduct was objectively reasonable under all the circumstances. *Graham*, 490 U.S. at 397; *see also Jackson v. Sauls*, 206 F.3d 1156, 1169-70 (11th Cir. 2000) (discussing the excessive force standard articulated by the Supreme Court in *Graham*).

Whether an officer's use of force in a given case was excessive cannot be determined by a bright-line rule, and "[t]he hazy border between permissible and forbidden force is marked by a multifactored, case-by-case balancing test . . . [which] requires weighing of all the circumstances." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997).  The factors which courts should weigh include the severity of the offense, whether the detainee poses an immediate risk to himself or to others, and whether the detainee is actively resisting his restraint. *Graham*, 490 U.S. at 396; *Garner*, 471 U.S. at 8-9.  Courts may also consider factors such as the severity of the injury inflicted, the number of persons the police have to deal with at one time, the duration of the action, and the dangerousness of the person subject to the police action. *See Crosby v. Paulk*, 187 F.3d 1339, 1351 (11th Cir. 1998).

---

[4]        In the present case, the "order of battle" set forth in *Saucier* is appropriate because the evidence, viewed in the light most favorable to Fields, does not support a finding that the Defendants violated a constitutional right.  Therefore, the Court need not, and does not, reach the second *Saucier* inquiry.

## IV.    ANALYSIS

Fields' excessive force claims fail for multiple reasons.

First, recovery for Fields is barred by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Heck* held that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Id.* at 486-87.  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  *Id.* at 487. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id.*

Fields was convicted of Mahnke's attempted murder.  Fields has presented no argument or evidence that his conviction was invalidated or otherwise called into question by any of the procedures identified in *Heck*.  The Court must therefore assume for the purposes of deciding this motion that Fields intended to kill Mahnke.  *See, e.g.*, *Diggs v. New York Police Dept*, No. 04-CV-1849, 2005 WL 3533158 (E.D.N.Y. Dec. 22, 2005) (holding that a defendant convicted of attempted murder is collaterally estopped from arguing in a § 1983 proceeding that he did not act with intent to kill).  The Court finds that under the applicable standard for use of force by law enforcement officers set forth above, the Defendants did not act unreasonably when they used non-lethal force to arrest Fields and prevent him from murdering Mahnke.

The Defendants wrestled Fields to the ground, punched him, and subdued him without using any weapon or chemical spray.  Because such force is imminently reasonable to prevent the commission of a murder, a judgment in favor of Fields on his §1983 claims for excessive force would necessarily imply the invalidity of his conviction for attempted murder.  If Fields is guilty of attempted murder -- and under *Heck* the Court must assume that he is -- then the Defendants' use of force was reasonable under the

circumstances.[5]  The application of *Heck* is fatal to Fields' excessive force claims.  *See, e.g.*, *Cunningham v. Gates*, 312 F.3d 1148, 1155 (9th Cir. 2002) (holding that successful § 1983 suit for excessive force "would necessarily imply the invalidity of [the plaintiff's] state convictions for felony murder and attempted murder" where "there was no break between [the plaintiff's] provocative act of firing on the police and the police response that he claims was excessive").[6]

Second, the uncontroverted evidence before the Court supports the conclusion that the Defendants' use of force was reasonable under the circumstance.  The *evidence* before the Court, which includes Fields' convictions, H. Lopez's and Mahnke's depositions, and the Broward Sheriff's Office reports, paints a vivid picture of Fields violently choking and slamming Mahnke, threatening to kill her and actively resisting arrest.  The evidence shows that the Defendants saw Fields violently attack Mahnke and threaten to kill her, and that they were aware that Fields violently burgled Mahnke's dwelling earlier that day.  Fields has not offered any evidence that contradicts the Defendants' version of events or could sustain his burden at trial of proving that the Defendants acted unreasonably.

---

[5]      In fact, applicable case law and statutes likely permitted the Defendants to use **deadly** force to prevent further serious injury or death to Mahnke.  *See Garner*, 471 U.S. at 11 ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."); *Menuel v. City of Atlanta*, 25 F.3d 990, 996-97 (11th Cir. 1994) ("The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases.  The only test is whether what the police officers actually did was reasonable.") (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994)); *cf.* Fla. Stat. §§ 776.012, 776.031 (authorizing deadly force in defense of others to prevent great bodily harm or the imminent commission of a forcible felony).

[6]      Of course, it is possible that, as a matter of law, Fields' claims for excessive force could proceed despite *Heck* if law enforcement officers, notwithstanding their legal entitlement to use force in arresting Fields, acted maliciously in doing so.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008); *see also Smithart v. Towery*, 79 F.3d 951 (9th Cir. 1996) (holding that a successful claim for excessive force in the course of an arrest does not *automatically* imply the invalidity of the arrest under *Heck*).  There is no evidence in the record, however, that any of the Defendants acted maliciously.  Instead, the uncontroverted evidence is that the Defendants acted in good faith, in defense of themselves, and in defense of others.

The factors identified by the Supreme Court and the Eleventh Circuit for determining whether the force was reasonable all point to the conclusion the Defendants' use of force was reasonable in this circumstance.  The offense with which Fields was convicted, attempted murder, is grave.  The police had many good reasons to believe that Fields was dangerous: he had reportedly committed a violent burglary, beat and threatened to kill Mahnke, and was reportedly in possession of a firearm.  Immediately before the Defendants' use of force, the Defendants observed Fields attack and injure Mahnke.  The Defendants heard Fields yell "I am going to kill you bitch" while dragging Mahnke in a chokehold.  In view of these facts, it was reasonable for the Defendants to believe that Fields posed a serious and continuing threat to Mahnke.  Finally, Fields ignored the officer's warning and actively resisted arrest.

Accordingly, the Court finds that the Defendants did not use unreasonable or excessive force to arrest Fields and prevent the murder of Mahnke.

Additionally, because the Defendants did not use unreasonable force against Fields, Fields' failure to intervene claim must also fail.

## V.    CONCLUSION

The Defendants are entitled to summary judgment because (1) Fields' claims are barred by the rule of *Heck v. Humphrey* and (2) the uncontroverted evidence before the Court shows that the Defendants did not use unreasonable force in violation of the Fourth Amendment.  Because the Defendants' use of force did not violate a statutory or constitutional right, the Defendants are also entitled to summary judgment based on their qualified immunity.

## VI.   RECOMMENDATION

The Defendants' motion for summary judgment should be granted.

## VII.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the Honorable William P. Dimitrouleas, United States District Judge.  Each party may file a response to the other party's objection within 14 days of the objections.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in

this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)).

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this 3rd day of September, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable William P. Dimitrouleas
All counsel of record

Derrick Fields, **PRO SE**
Inmate No. #L19099
Okeechobee Correctional Institute
3420 NE 168th Street
Okeechobee, FL 34972